WILLIAM J. GEDDES
Nevada Bar No. 6984
KRISTEN R. GEDDES
Nevada Bar No. 9027
THE GEDDES LAW FIRM, P.C.
1575 Delucchi Lane, Suite 206
Reno, Nevada 89502
Phone: (775) 853-9455
Fax: (775) 299-5337
Email: Will@TheGeddesLawFirm.com
Email: Kristen@TheGeddesLawFirm.com
*Attorneys for Plaintiff Garth Shelton*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| GARTH SHELTON, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>ELDORADO RESORTS, INC., a domestic corporation; CAESAR'S ENTERTAINMENT, INC., a foreign corporation.<br><br>Defendants. | CASE NO: 3:21-cv-121<br><br>**COMPLAINT**<br><br>**JURY DEMAND** |

COMES NOW Plaintiff GARTH SHELTON, by and through his counsel, William J. Geddes, Esq. and Kristen R. Geddes, Esq. of THE GEDDES LAW FIRM, P.C., and hereby complains of Defendants ELDORADO RESORTS, INC., and CAESAR'S ENTERTAINMENT, INC., as follows.

## I.

## STATEMENT OF THE CASE

This is an employment-discrimination case arising under the Americans with Disabilities Act and the Family Medical Leave Act and Nevada state law.  Plaintiff GARTH SHELTON worked as a Microsoft Systems Analyst for Defendants at their corporate headquarters located in Reno, Nevada. Plaintiff alleges herein that he suffered discrimination and retaliation based on his disabilities, when Defendants refused to accommodate his disabilities, failed to engage in the interactive process, and terminated him.  Additionally, Plaintiff alleges Defendants retaliated against Plaintiff in response to

1

Plaintiff taking protected medical leave under the Family Medical Leave Act. Plaintiff seeks monetary, equitable, and injunctive relief.

## II.
## JUISDICTION AND VENUE

1. The federal claims of this case are maintained pursuant to 28 U.S.C. § 1331. In particular, this case asserts federal discrimination claims, actionable under the Americans with Disabilities Act and the Americans with Disabilities Act Amendment Act (collectively, "ADA"), codified at 42 U.S.C. § 12101 *et seq*., and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq*. This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(a).

2. Venue is proper in the U.S. District Court situated in Reno, Nevada, under Local Rule IA 1-6 and 28 U.S.C. § 1391(b) because this Court is located in the "unofficial Northern Division," embracing the City of Reno, County of Washoe, Nevada, and because:

   (a) Defendants conducted business in the City of Reno, County of Washoe, Nevada where a substantial part of the events or omissions giving rise to the claims of the case occurred; and

   (b) Venue is proper in a judicial district in which a substantial part of the events or omissions giving rise to the claims of the case occurred, or where any Defendants resides.

## III.
## PARTIES

3. At all relevant times herein, Plaintiff GARTH SHELTON ("SHELTON") was a citizen of the state of Nevada, residing in the County of Washoe, Nevada, and he was employed by Defendants.

4. Defendant ELDORADO RESORTS, INC., ("ERI") is a domestic corporation, authorized to do business in the state of Nevada and actually doing business in the state of Nevada, operating as a gaming entertainment company, having its headquarters located in Reno, Nevada.

5. Defendant CAESAR'S ENTERTAINMENT, INC. ("CAESAR'S") (formerly known as ELDORADO RESORTS, INC., or ERI) is a Delaware corporation, authorized to do business in the state of Nevada and actually doing business in the state of Nevada, operating as a gaming entertainment company, having its headquarters located in Reno, Nevada.

6. At all relevant times herein, Defendants were an employer SHELTON within the meaning of 42 U.S.C. § 12111(5), and covered entities within the meaning of 42 U.S.C. § 12111(2) and 29 C.F.R. § 1630.2, under a single integrated employer or integrated enterprise theory having supervision and/or management, and control over SHELTON.

## IV.

## GENERAL ALLEGATIONS

7. At all relevant times herein, SHELTON had, and has, Chron's disease and diabetes, which disabilities ("Disabilities") substantially limit one or more of his major life activities.

8. At all relevant times herein, SHELTON had, and has, a record of such Disabilities.

9. At all relevant times herein, Defendants have regarded SHELTON as having such Disabilities.

10. At all relevant times herein, SHELTON's Disabilities qualified, and qualify, as "disabilities," within the meaning of the ADA, including as codified at 42 U.S.C. §12102.

11. At all relevant times herein, Defendants, and each of them, were aware of SHELTON's Disabilities.

12. SHELTON was hired by ERI in May 2018 as a Microsoft Systems Analyst.

13. SHELTON was hired into and worked in the IT group that handles all of the IT for the corporate entity, and his work location was in the Circus Circus hotel/casino.

14. When SHELTON was hired, SHELTON was told by Human Resources and his supervisor that SHELTON would receive unlimited sick and vacation time under the company's FTO (flexible time off) policy as a salaried employee.

15. Around the beginning of August 2018 SHELTON was having severe gastrointestinal and incontinence issues that required him to go to the emergency room, urgent care and doctor's appointments requiring that SHELTON take time off from work.

16. SHELTON reported his absences to his supervisor, Ryan Jarrells ("Jarrells"), Director of Technology Services, and had doctor's notes for all of his medical appointments.

17. Around the beginning of 2019, SHELTON was provided with a laptop at his request to work remotely when SHELTON was ill.

3

18. Even though SHELTON was working remotely from home, SHELTON was still required to report the day as an FTO sick day, which SHELTON told Jarrells that did not agree with because SHELTON was performing his work at home.

19. Jarrells told SHELTON that Tony Phelps, Corporate Vice President of IT required that an FTO day be reported even when working remotely.

20. In the fall of 2019, Jarrells stated that SHELTON was taking too much sick time off (even though SHELTON worked remotely) and Jarrells directed SHELTON to apply for Family Medical Leave (FMLA), even though SHELTON could have continued to work from home.

21. SHELTON was on FMLA leave from approximately November 7, 2019-January 13, 2020, during which time SHELTON was continuing to receive medical treatment to obtain a confirmation diagnosis for his medical disability.

22. Around February-March, 2020, SHELTON was determined to be suffering from Chron's disease, and SHELTON is also a diabetic, which commonly co-occurs with Chron's disease.

23. The day SHELTON came returned from FMLA on January 13, 2020, Jarrells told SHELTON that SHELTON would not be getting an annual bonus or his annual raise due to taking too much sick leave, even though SHELTON's performance reviews rated SHELTON as excellent.

24. Jarrells also told SHELTON that the rest of the IT team was upset with SHELTON for having to cover his work while SHELTON was on medical leave, and Jarrells seemed mad at SHELTON, too, for having been gone on medical leave.

25. To that end, Jarrells instructed SHELTON not to talk to Tony Phelps or Peter Braughten, Senior Vice President of IT, and not to make eye contact with them unless they spoke to SHELTON first.

26. Prior to taking leave for his disability, SHELTON had a good working relationship with Mr. Phelps and Mr. Braughten, but SHELTON was frozen out and ignored after SHELTON returned from medical leave.

27. Jarrells also told SHELTON was lucky to still have his job, and said that if it weren't for FMLA protection, Mr. Phelps and Mr. Braughten would have gotten rid of SHELTON.

28. When SHELTON returned from medical leave, his regular job duties were not restored and SHELTON was required to train other staff to perform his job duties and on the systems SHELTON was performing prior to going on medical leave. SHELTON stated to Jarrells that it appeared as though they were planning to get rid of SHELTON, when SHELTON was required to train other employees on his job duties, which Jarrells denied.

29. SHELTON was forced to take short term disability from April 13, 2020 through June 4, 2020, but SHELTON could have worked from home with a reasonable accommodation of using a laptop to work remotely.

30. Similarly, after his short-term disability expired, SHELTON was approved for long term disability starting June 4, 2020.

31. Due to the COVID-19 pandemic, gaming establishments were furloughed between mid-April through July 31, 2020.

32. On information and belief, other members of the IT group that SHELTON worked with continued working notwithstanding the furlough of a large percentage of gaming establishment employees.

33. On August 19, 2020, SHELTON received an e-mail from Jarrells, while SHELTON was on approved long-term disability.

34. The e-mail from Jarrells stated that after the furlough ended, the employer could not recall SHELTON in the foreseeable future and also that the company was eliminating several positions and was restructuring, and SHELTON was terminated effective August 20, 2020.

35. SHELTON alleges that the reasons cited in the termination e-mail were pretext, and that SHELTON was terminated based on his disabilities in violation of the ADA, FMLA and Nevada state law.

36. SHELTON timely submitted, or caused to be submitted, a charge of unlawful disability discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") in EEOC Claim Nos. 550-2020-01949.

37. On December 10, 2020, the EEOC issued a "right-to-sue letter" for the discrimination and retaliation claims of this case, set forth in EEOC Claim Nos. 550-2020-01949, pursuant to 42

U.S.C. § 2000e-5(f), and SHELTON timely filed the instant suit within ninety (90) days of the receipt of this "right-to-sue letter."

## FEDERAL CLAIMS

## V.

## FIRST CLAIM FOR RELIEF

## UNLAWFUL DISCRIMINATION BASED ON DISABILITY:

**Failure to Accommodate Disabilities, Unlawful Terms and Conditions of Employment, and Termination of Employment**

**(Americans With Disabilities Act and Amendment Act - 42 U.S.C. § 12101** *et seq.***)**

38. SHELTON incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

39. At all relevant times herein, SHELTON'S Disabilities were physical disabilities physical limitations to his body, including Chron's, co-occurring with diabetes, which Disabilities are covered by, and within the meaning of, the ADA codified at 42 U.S.C. § 12102 *et seq.*, in that these physical impairments substantially limited one or more of SHELTON'S major life activities.

40. At all relevant times herein, Defendants, including through its agents and employees:

    (a) were aware of SHELTON'S Disabilities;

    (b) were aware that SHELTON had a record of such Disabilities; and/or

    (c) regarded SHELTON as having physical impairments, including his Disabilities, that substantially limited one or more of his major life activities.

41. Notwithstanding SHELTON'S Disabilities, at all relevant times herein, SHELTON was a qualified individual who could perform the essential functions of his job, with or without a reasonable accommodation of his Disabilities.

42. At all relevant times herein, Defendants, including through its employees and agents, intentionally engaged in unlawful discrimination and disparate treatment of SHELTON, as compared to other similarly-situated employees, and such differences in treatment were based on SHELTON'S protected characteristic of his Disabilities, described herein.

43. Defendants, through their employees and agents, engaged in such disparate treatment and unlawful discrimination of SHELTON because of, or substantially motivated by, SHELTON's disabilities, including, when:

    (a)    failing to accommodate SHELTON's Disabilities described herein;

    (b)    failing to engage in the interactive process for those Disabilities; and

    (c)    terminating SHELTON from his employment.

44. At all relevant times herein, SHELTON's Disabilities were because of, or were a motivating factor in the decisions of Defendants, including through its employees and agents, to intentionally engage in the disparate treatment and unlawful discrimination against SHELTON, as described herein, for which Defendants CAESAR'S are liable for its culpable conduct under the ADA and 42 U.S.C. § 12101 *et seq*.

45. As a result of such intentional, unlawful, and discriminatory conduct against SHELTON by Defendants, including through their employees and agents, based on SHELTON'S Disabilities, SHELTON has suffered, and continues to suffer, economic losses, including lost wages and benefits, back pay, front pay, physical and emotional harm, including mental anguish, inconvenience, and the loss of enjoyment of life, for which he is entitled to compensatory and equitable damages, in an amount to be proven at trial.

46. The disparate treatment and unlawful discrimination by Defendants, including through their employees and agents, was willful, malicious, and/or engaged in with a reckless indifference to the health, safety, wellbeing, and federally-protected rights of SHELTON—including because Defendants summarily terminated SHELTON after he pursued his rights to reasonable accommodation —warranting an award of punitive damages, to punish Defendants, in an amount determined by a jury at trial, according to law.

47. As a result of such intentional, unlawful, and discriminatory conduct against SHELTON by Defendants, including through their employees and agents, based on SHELTON'S Disabilities, SHELTON has had to retain the services of attorneys in this matter, and he, therefore, is entitled to, and seeks reimbursement for, his attorneys' fees and costs, his expert-witness fees, and his court costs, in an amount to be proven at trial.

7

48. As a result of such intentional, unlawful, and discriminatory conduct against SHELTON by Defendants, including through their employees and agents, based on SHELTON'S Disabilities, SHELTON is entitled to, and seeks, declaratory relief, in the form of a declaration by this Court, that Defendants violated SHELTON'S rights by engaging in unlawful discrimination, as alleged herein.

49. As a result of such intentional, unlawful, and discriminatory conduct against SHELTON by Defendants, including through their employees and agents, based on SHELTON'S Disabilities, SHELTON is entitled to, and seeks, injunctive relief, in the form of an injunction issued by this Court, that compels Defendants to give effect to the rights of SHELTON, and to take other appropriate action, including: the removal of all adverse information from his employee file, relevant to the claims of this case; and, if appropriate and feasible, the reinstatement of SHELTON to his prior employment position, with full pay and benefits, as if never terminated.

## VI.

## SECOND CLAIM FOR RELIEF

### VIOLATION OF THE ANTI-RETALIATION PROVISIONS OF THE ADA - 42 U.S.C. § 12203 *et seq.*

50. SHELTON incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

51. Under the anti-retaliation provision of the ADA, codified at 42 U.S.C. § 12203(a), it is an unlawful employment practice for an employer to discriminate against any of its employees because the employee has opposed any practice made an unlawful employment practice by 42 U.S.C. § 12117, *et seq.* or because the employee has participated in an investigation concerning the same.

52. At all relevant times herein, SHELTON engaged in conduct amounting to "protected activity" under the anti-retaliation provisions of the ADA, including, when SHELTON requested a reasonable accommodation for his Disabilities.

53. During his employment, SHELTON suffered adverse actions by Defendants including when Defendants CAESAR'S terminated SHELTON from his employment, as described herein.

54. At all relevant times herein, Defendants and their employees, subjected SHELTON to these adverse actions because of his participation in such protected activity relating to his Disabilities.

8

55. At all times relevant herein, such adverse actions taken by Defendants and their employees against SHELTON would be materially adverse to a reasonable employee, reasonably likely to deter charging parties or others from engaging in protected activity, and such adverse employment actions materially affected the compensation, terms, conditions, or privileges of SHELTON's employment and other rights secured to SHELTON .

56. There was a causal link between SHELTON's protected activity and these adverse employment actions that SHELTON suffered.

57. Defendants and their employees unlawfully discriminated against SHELTON by retaliation, described herein, and violated the anti-retaliation provisions of the ADA, including as codified at 42 U.S.C. § 12203.

58. As a result of the unlawful discrimination and retaliation by Defendants and their employees, SHELTON has suffered, and continues to suffer, losses, injuries, damages, and harm, including the following:

(a) economic losses, including back pay, front pay, and pecuniary compensatory damages;

(b) non-pecuniary, compensatory damages, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life; and

(c) wrongful interference with his ability to find new employment in the future.

59. Accordingly, SHELTON is entitled to compensatory and equitable damages, in an amount to be proven at trial, and he is entitled to equitable relief to address harm that cannot adequately be remedied by money damages but requires injunctive relief, as prayed for herein.

60. The unlawful discrimination and retaliation by Defendants and their employees was willful, malicious, and/or engaged in with a reckless indifference to the federally-protected rights of SHELTON —including because Defendants summarily terminated SHELTON after he pursued his rights to reasonable accommodation—warranting an award of punitive damages, to punish Defendants, in an amount determined by a jury at trial, according to law.

61. As a result of this unlawful discrimination and retaliation by Defendants and their employees, described herein, SHELTON has had to retain the services of attorneys in this matter, and

1  he, therefore, is entitled to, and seeks reimbursement for, his attorneys' fees and costs, his expert-
2  witness fees, and his court costs, in an amount to be proven at trial.

3  62. As a result of this unlawful discrimination and retaliation by Defendants, and their
4  employees, described herein, SHELTON is entitled to, and seeks, declaratory relief, in the form of a
5  declaration by this Court, that Defendants and their employees violated SHELTON's rights by
6  engaging in unlawful discrimination and retaliation, as alleged herein.

7  63. As a result of this unlawful discrimination and retaliation by Defendants and their
8  employees, SHELTON is entitled to, and seeks, injunctive relief, in the form of an injunction issued by
9  this Court, that:

10  (a) compels Defendants to remove false, adverse information contained in
11  SHELTON's personnel files, relating to the claims of this case, and

12  (b) If appropriate and feasible, compel Defendants to reinstate SHELTON to his
13  prior employment position, with full pay and benefits, as if never terminated.

### *STATE CLAIMS*

### VII.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF NEVADA'S ANTI-DISCRIMINATION STATUTE (NRS 613.330) BASED ON DISABILITY

19  64. SHELTON incorporates by reference all prior allegations of this *Complaint*, as though
20  fully set forth herein.

21  65. Under Nevada's anti-discrimination statute, codified at NRS § 613.330, it is an unlawful
22  employment practice for an employer to discriminate against any of its employees on the basis of the
23  employee's disability.

24  66. At all relevant times herein, SHELTON'S Disabilities were physical disabilities and
25  related conditions, causing pain, suffering, and physical limitations to his body, which Disabilities are
26  covered by, and within the meaning of, NRS 613.330, in that these physical impairments substantially
27  limited one or more of SHELTON'S major life activities.

28  67. At all relevant times herein, Defendants, including through its agents and employees:

10

(a) were aware of SHELTON'S Disabilities;

(b) were aware that SHELTON had a record of such Disabilities; and/or

(c) regarded SHELTON as having physical impairments, including his Disabilities, that substantially limited one or more of his major life activities.

68. Notwithstanding SHELTON'S Disabilities, at all relevant times herein, SHELTON could perform the essential functions of his job, with or without a reasonable accommodation of his Disabilities.

69. At all relevant times herein, Defendants, including through its employees and agents, intentionally engaged in unlawful discrimination and disparate treatment of SHELTON, as compared to other similarly-situated employees, and such differences in treatment were based on SHELTON'S protected characteristic of his Disabilities, described herein.

70. Defendants, through their employees and agents, engaged in such disparate treatment and unlawful discrimination of SHELTON because of, or substantially motivated by, SHELTON's disabilities, including, when:

(a) failing to accommodate SHELTON's Disabilities described herein;

(b) failing to engage in the interactive process for those Disabilities; and

(c) terminating SHELTON from his employment.

71. At all relevant times herein, SHELTON's Disabilities were because of, or were a motivating factor in the decisions of Defendants, including through its employees and agents, to intentionally engage in the disparate treatment and unlawful discrimination against SHELTON, as described herein, for which Defendants are liable for its culpable conduct under NRS 613.330.

72. As a result of such intentional, unlawful, and discriminatory conduct against SHELTON by Defendants, including through their employees and agents, based on SHELTON'S Disabilities, SHELTON has suffered, and continues to suffer, economic losses, including lost wages and benefits, back pay, front pay, physical and emotional harm, including mental anguish, inconvenience, and the loss of enjoyment of life, for which he is entitled to compensatory and equitable damages, in an amount to be proven at trial.

73. The disparate treatment and unlawful discrimination by Defendants, including through

11

their employees and agents, was willful, malicious, and/or engaged in with a reckless indifference to the health, safety, wellbeing, and federally-protected rights of SHELTON— including because Defendants summarily terminated SHELTON after he pursued his rights to reasonable accommodation—warranting an award of punitive damages, to punish Defendants, in an amount determined by a jury at trial, according to law.

74. As a result of such intentional, unlawful, and discriminatory conduct against SHELTON by Defendants, including through their employees and agents, based on SHELTON'S Disabilities, SHELTON has had to retain the services of attorneys in this matter, and he, therefore, is entitled to, and seeks reimbursement for, his attorneys' fees and costs, his expert-witness fees, and his court costs, in an amount to be proven at trial.

75. As a result of such intentional, unlawful, and discriminatory conduct against SHELTON by Defendants, including through their employees and agents, based on SHELTON'S Disabilities, SHELTON is entitled to, and seeks, declaratory relief, in the form of a declaration by this Court, that Defendants violated SHELTON'S rights by engaging in unlawful discrimination, as alleged herein.

76. As a result of such intentional, unlawful, and discriminatory conduct against SHELTON by Defendants, including through their employees and agents, based on SHELTON'S Disabilities, SHELTON is entitled to, and seeks, injunctive relief, in the form of an injunction issued by this Court, that compels Defendants to give effect to the rights of SHELTON, and to take other appropriate action, including: the removal of all adverse information from his employee file, relevant to the claims of this case; and, if appropriate and feasible, the reinstatement of SHELTON to his prior employment position, with full pay and benefits, as if never terminated.

## VIII.

### FOURTH CLAIM FOR RELIEF

#### VIOLATION OF THE ANTI-RETALIATION PROVISIONS OF NRS 613.340

77. SHELTON incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

78. Under Nevada's anti-retaliation provision, codified at Nevada Revised Statutes ("NRS")

§ 613.340, it is an unlawful employment practice for an employer to discriminate against any of its employees because the employee has opposed any practice made an unlawful employment practice by NRS 613.310-613.4383 or because the employee has participated in an investigation concerning the same.

79. At all relevant times herein, SHELTON engaged in conduct amounting to "protected activity" under the anti-retaliation provisions of NRS § 613.340, including, when SHELTON requested a reasonable accommodation for his Disabilities.

80. During his employment, SHELTON suffered adverse actions by Defendants including when Defendants terminated SHELTON from his employment, as described herein.

81. At all relevant times herein, Defendants and their employees, subjected SHELTON to these adverse actions because of his participation in such protected activity relating to his Disabilities.

82. At all times relevant herein, such adverse actions taken by Defendants and their employees against SHELTON would be materially adverse to a reasonable employee, reasonably likely to deter charging parties or others from engaging in protected activity, and such adverse employment actions materially affected the compensation, terms, conditions, or privileges of SHELTON's employment and other rights secured to SHELTON .

83. There was a causal link between SHELTON's protected activity and these adverse employment actions that SHELTON suffered.

84. Defendants and their employees unlawfully discriminated against SHELTON by retaliation, described herein, and violated the anti-retaliation provisions of NRS § 613.340.

85. As a result of the unlawful discrimination and retaliation by Defendants and their employees, SHELTON has suffered, and continues to suffer, losses, injuries, damages, and harm, including the following:

(a) economic losses, including back pay, front pay, and pecuniary compensatory damages;

(b) non-pecuniary, compensatory damages, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life; and

(c) wrongful interference with his ability to find new employment in the future.

86. Accordingly, SHELTON is entitled to compensatory and equitable damages, in an amount to be proven at trial, and he is entitled to equitable relief to address harm that cannot adequately be remedied by money damages but requires injunctive relief, as prayed for herein.

87. The unlawful discrimination and retaliation by Defendants and their employees was willful, malicious, and/or engaged in with a reckless indifference to the federally-protected rights of SHELTON —including because Defendants summarily terminated SHELTON after he pursued his rights to reasonable accommodation—warranting an award of punitive damages, to punish Defendants, in an amount determined by a jury at trial, according to law.

88. As a result of this unlawful discrimination and retaliation by Defendants and their employees, described herein, SHELTON has had to retain the services of attorneys in this matter, and he, therefore, is entitled to, and seeks reimbursement for, his attorneys' fees and costs, his expert-witness fees, and his court costs, in an amount to be proven at trial.

89. As a result of this unlawful discrimination and retaliation by Defendants, Defendants and their employees, described herein, SHELTON is entitled to, and seeks, declaratory relief, in the form of a declaration by this Court, that Defendants and their employees violated SHELTON's rights by engaging in unlawful discrimination and retaliation, as alleged herein.

90. As a result of this unlawful discrimination and retaliation by Defendants and their employees, SHELTON is entitled to, and seeks, injunctive relief, in the form of an injunction issued by this Court, that:

(a) compels Defendants to remove false, adverse information contained in SHELTON's personnel files, relating to the claims of this case, and

(b) if appropriate and feasible, compel Defendants to reinstate SHELTON to his prior employment position, with full pay and benefits, as if never terminated.

. . .

. . .

. . .

. . .

. . .

## IX.

## FIFTH CLAIM FOR RELIEF
## FMLA RETALIATION

**(29 U.S.C. § 2601 *et seq*.)**

91.  SHELTON incorporates by reference all prior allegations of this *Complaint*, as though fully set forth herein.

92.  The FMLA makes it unlawful for an employer to discriminate or retaliate against an employee who exercises his right to leave.  29 U.S.C. § 2615(a)(1)-(2).  SHELTON is an eligible employee under the FMLA.

93.  Defendants retaliated against SHELTON because he exercised his rights under the FMLA, by *inter alia*, freezing SHELTON out upon his return from FMLA leave, refusing to refusing to reinstate SHELTON to his same duties upon his return from leave, making threatening remarks toward SHELTON's employment in connection with his taking leave, and ultimately terminating SHELTON.

94.  As a direct and proximate result of the Defendants' conduct, SHELTON has suffered, and continues to suffer, losses, injuries, damages, and harm, including the following economic losses, including back pay, front pay, and pecuniary compensatory damages.

95.  As a direct and proximate result of the Defendants' conduct, SHELTON is entitled to liquidated damages, as Defendants did not act in good faith and had no reasonable grounds for believing they were not violating the FMLA.

96.  As a result of this unlawful retaliation by Defendants and their employees, described herein, SHELTON has had to retain the services of attorneys in this matter, and he, therefore, is entitled to, and seeks reimbursement for, his attorneys' fees and costs, his expert-witness fees, and his court costs, in an amount to be proven at trial.

97.  As a result of this unlawful discrimination and retaliation by Defendants, and their employees, described herein, SHELTON is entitled to, and seeks, declaratory relief, in the form of a declaration by this Court, that Defendants  and their employees violated SHELTON's rights by engaging in unlawful retaliation, as alleged herein.

98.  Finally, SHELTON is entitled to, and seeks, injunctive relief, in the form of an

injunction issued by this Court, that:

    (a)    compels Defendants to remove false, adverse information contained in SHELTON's personnel files, relating to the claims of this case, and

    (b)    if appropriate and feasible, compels Defendants to reinstate SHELTON to his prior employment position, with full pay and benefits, as if never terminated.

## X.
## PRAYER FOR RELIEF

WHEREFORE, SHELTON prays for judgment against Defendants, as follows:

1. For equitable relief, including back pay and front pay;
2. For general, compensatory damages on all claims, in an amount to be proven at trial;
3. For special, compensatory damages on all claims, in an amount to be proven at trial;
4. For past and future compensatory damages, including incidental and consequential losses, incurred by reason of Defendants' acts, omissions, carelessness, negligence, deliberate indifference, and other culpable conduct described herein, in an amount to be proven at trial;
5. For exemplary and punitive damages, as allowed by law;
6. For costs of the suit incurred herein;
7. For attorneys' fees, costs, and prejudgment interest, as allowed by law;
8. For experts' fees, costs as allowed by law, in an amount in an amount to be determined at trial;
9. For Declaratory relief, equitably determined by the Court at trial. Pursuant to 28 U.S.C. § 2201, Federal Rule of Civil Procedure 57, 42 U.S.C. §§ 2000e-5, NRS 30.070, NRS 30.100, NRS 613.333, and the Court's inherent equitable powers, SHELTON seeks, and is entitled to have, declaratory relief awarded in his favor, to declare his rights and the obligations of Defendants, which matters are now in controversy or dispute, where such declaratory relief is necessary and proper to the termination of the disputes raised herein, including as specifically prayed for below, including declaratory relief whereby the Court issues a declaration that Defendants unlawfully discriminated against SHELTON

in violation of the ADA, and otherwise violated SHELTON'S rights under federal law and state law, as alleged herein, and regarding the rights and obligations of the parties, relating to SHELTON'S employment and re-employment;

10. Based on the foregoing, SHELTON has suffered an irreparable injury, and the remedies available at law, such as monetary damages, are inadequate to compensate for that injury. This inadequacy is, in part, based on the fact that Defendants are currently maintaining false and disparaging information about SHELTON's work performance and tenure, which will be discovered by third parties, including prospective employers of SHELTON, which will interfere with his ability to obtain employment, including re-employment at Defendants. As such SHELTON is entitled to injunctive relief, including an injunction compelling Defendants:

   (a) To remove false, adverse information contained in his personnel files relating to the claims of this case;

   (b) To provide only a "neutral" job reference concerning SHELTON's tenure at Defendants, to all inquiring prospective employers; and

   (c) To reinstate SHELTON's employment, if feasible and appropriate, with full pay and benefits, as if never terminated.

Considering the balance of hardships between Plaintiff and Defendants, a remedy in equity is warranted, and the public interest would not be disserved by issuance of such injunctive relief. SHELTON herein seeks Injunctive relief, equitably determined by the Court at trial;

11. For such other relief as the Court may deem just and proper; and

12. Pursuant to the *Federal Rules of Civil Procedure*, Rule 38, Plaintiff demands a trial by jury on all issues triable by right of a jury.

Dated this 10th day of March 2021.                    THE GEDDES LAW FIRM, P.C.

                                                       _____
                                                       KRISTEN R. GEDDES
                                                       Nevada Bar Number 9027

The Geddes Law Firm, P.C.
1575 Delucchi Lane, Suite 206
Reno, Nevada 89502
Phone: (775) 853-9455
Fax: (775) 299-5337
*Attorneys for Plaintiff Garth Shelton*